**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| TASHIA M. PARHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:08-cv-1102-SEB-DML |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Complaint for Judicial Review**

Tashia M. Parham ("Parham") seeks judicial review of the partial denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

**I.  Background**

Parham filed applications for SSI and DIB on May 1, 2003, alleging an onset date of disability of July 17, 2001. Her applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted and a hearing was conducted on November 29, 2006. Parham appeared, accompanied by her attorney. Medical and other records were introduced into evidence. Parham, her mother, two medical experts, and a vocational expert testified at the hearing. The ALJ issued a partially favorable decision on January 23, 2007. On June 27, 2008, the Appeals Council denied Parham's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Parham met the insured status requirements of the Act as of July 17, 2001, the date she became disabled; (2) Parham had not engaged in substantial gainful activity since July 17, 2001, the alleged onset date; (3) at all times relevant to the ALJ's decision, Parham had severe impairments consisting of systemic lupus erythematosis resulting in nephrotic syndrome and renal vein thrombosis, obesity, and a broad-based disc bulge of the L4-L5 level with mild to moderate neural foramina narrowing; (4) from July 17, 2001, through December 31, 2003, the period during which Parham was disabled, the severity of her nephrotic syndrome medically equaled the criteria of Listing 6.06A of 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Parham was under a disability as defined by the Act from July 17, 2001, through December 31, 2003, (6) medical improvement occurred as of January 1, 2004, the date Parham's disability ended; (7) beginning on January 1, 2004, Parham did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (8) the medical improvement that had occurred was related to the ability to work because Parham no longer had an impairment or combination of impairments that met or medically equaled a listing; (9) after consideration of the entire record, the ALJ found that, beginning on January 1, 2004, Parham had the residual functional capacity ("RFC") to perform light exertional work, defined as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, standing and/or walking, off and on, for a total of approximately six hours of an eight hour workday, with intermittent sitting; and if someone can do light work, she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or an inability to sit for long periods of time; (10) beginning on January 1, 2004, Parham was capable of performing past relevant work as an insurance clerk, telemarketer and photographer, as this work did not require the performance of work-related activities precluded by Parham's current RFC; and (11) Parham's disability ended on January 1, 2004. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Parham was disabled for purposes of DIB and SSI beginning on July 17, 2001, and ending on January 1, 2004.

## II.  Discussion

### A.  Applicable Law

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id*. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.   Analysis

In this case, the ALJ determined that Parham had severe impairments and was disabled beginning on July 17, 2001, but that as a result of medical improvement, her disability ended on January 1, 2004. Parham argues that the ALJ's decision that her disability ended on January 1, 2004, is not supported by substantial evidence.

Parham first argues that the ALJ's determination at step one of the process was contrary to law. At step one, the ALJ determined that Parham had not engaged in substantial gainful activity since July 17, 2001, the alleged onset date. (R. at 66). In arriving at that conclusion, the ALJ acknowledged that Parham worked from June through August 2001 in collections, from July through September 2002 in customer service 40 hours a week, and from October through December 2002 in sales 40 hours a week. *Id.* The ALJ noted that although the work was at the substantial gainful activity level during those times, the work was for less than three months each and Parham stopped due to her medical conditions. *Id.* Therefore, the ALJ concluded that Parham had not engaged in substantial gainful activity at any time relevant to the decision. *Id.* The ALJ went on to state that Parham's earning record showed that she earned $10,003.36 in 2004, which is at the substantial gainful activity level. *Id.* She was found to be not disabled as of January 1, 2004, for the reasons set forth in the decision. *Id.* Parham asserts that the ALJ's finding that she had not engaged in substantial gainful activity at any time relevant to the decision while at the same time finding that the $10,003.36 earnings constituted substantial gainful activity level was inconsistent and improper. Parham asserts that work during a period of three months or less when an impairment forces a claimant to stop working should be considered an unsuccessful work attempt, not substantial gainful activity, citing Social Security Rulings

3

84-25 and 05-02, and 20 C.F.R. § 404.1574(A). Here, the ALJ properly acknowledged the periods of time during which Parham worked and he did not find that medical improvement occurred based solely on the fact that Parham worked in 2004. The ALJ did not deny Parham's claim at step one of the process. Rather, he found that she had not engaged in substantial gainful activity and proceeded to step two. There was no reversible error at step one of the process.

Next, Parham argues that the ALJ erred at step three of the process by finding that she was not disabled after December 31, 2003, because her combined impairments did not meet or equal any listed impairments. Parham argues that her due process rights were violated by of the Social Security Administration and by this ALJ due to their alleged policy and practice to ignore all evidence which is favorable to a claimant's claim. She argues that due process was denied because of "an institutional agency wide policy and procedure of only selectively considering the evidence in the record so as to exclude from the ALJ's decision any of the evidence which proves a claimant's disability." (Plt's Brief at 26). Not only has the plaintiff submitted no evidence to support such an exaggerated critique, but this argument far exceeds the proper scope of review in this case. Specifically as to this case, the ALJ did not ignore all evidence favorable to the claimant. Indeed, the ALJ found that for a closed period of time, Parham *was disabled* as defined by the Act.

As a second claim related to step three of the procedure, Parham argues that the ALJ should have found that her combined impairments satisfied Listing 14.02A-1,2,4,7 (systemic lupus erythematosis), Listing 1.04A (bulging and herniated lumbar discs), and Listing 12.04 (anxiety and depression). In support of this argument, Parham lists her diagnoses that would be relevant to such listings, but she fails to discuss the requirements of those listings. She also has not pointed to evidence suggesting that each of the criteria of the listings were satisfied or medically equaled. Parham, as the claimant, "has the burden of showing that [her] impairments meet a listing, and [s]he must show that [her] impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

The ALJ considered Listing 14.02 as it related to Parham's systemic lupus erythematosis, but he found that Parham had not had any further episodes of thrombosis since her initial treatment, and her renal failure was stabilized. (R. at 68). The ALJ further explained that although Parham had joint pain, she did not have an extreme limitation of the ability to walk or an extreme loss of function of both upper extremities. (R. at 68-69).

As to Listing 1.04, the ALJ determined that Parham's back impairment lacked the significant and persistent neurological abnormalities required. (R. at 69). "There is no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate effectively." *Id.* In support of her claim that the ALJ erred in this finding, Parham asserts that Dr. Stump testified at the hearing that a 2003 MRI showed that Parham "did have some abnormalities found with up to moderate encroachment of some nerve root." (R. at 874). The ALJ did not misstate the record. Dr. Stump, in that same paragraph of testimony, opined that Parham "really didn't meet any listing." *Id.* He further stated that "they felt that within a few weeks or months she'd get

4

better." *Id.* In addition, the radiology impression of the MRI indicates a "[b]road-based disc bulge of the L4-L5 level with mild to moderate neural foramina narrowing," with the rest of the lumbar spine "unremarkable." (R. at 351). It further indicates that there had been no nerve root impingement. *Id.*

As to Listing 12.04, Parham has not discussed any evidence as it relates to the A and B criteria of Listing 12.04. The ALJ reasonably noted that the State Agency physician and the psychological expert opined that Parham's mental impairment was not severe. (R. at 67). The ALJ stated that although Parham's mental impairments were not severe when considered individually, he did give consideration to those impairments in combination with her other impairments at the remaining steps of the analysis. *Id.* No discussion of Listing 12.04 was warranted under these circumstances.

In sum, the ALJ properly considered the relevant listings at step three of the analysis. His review of the evidence was far from perfunctory. The ALJ did not err in finding that Parham's impairments did not meet or medically equal Listings 14.02, 1.04, or 12.04. Parham has not met her burden of showing that her impairments met or medically equaled a listing after December 31, 2003. The ALJ's findings at step three were supported by substantial evidence. Accordingly, the ALJ did not err in finding that Parham's impairments medically equaled Listing 6.06A for a closed period of time but did not satisfy any other listing during any relevant period of time.

Parham next contends that the ALJ misstated the evidence when he supported his conclusion that medical improvement occurred as of January 1, 2004, with the statement that "[a] report including several laboratory results from June of 2004, including a urine analysis, was normal." (R. at 68, citing R. at 632). Parham is correct in pointing out that the laboratory data, in fact, indicated that Parham's "urine analysis as of June 2004 showed 30+ proteinuria. The rest of the studies are normal." (R. at 632). Parham argues that this error renders invalid the ALJ's finding that her impairments had improved significantly. Although the ALJ did misstate the record as to whether that urine analysis was "normal," this discrepancy does not alter the opinion of medical expert Dr. Stump that Parham's combined impairments medically equaled Listing 6.06A (nephrotic syndrome, with anasarca) for the period of July 17, 2001, through the end of 2003, but not thereafter. (R. at 879). Dr. Stump noted that after 2001 there was a gradual improvement in the systemic lupus erythematosus and renal vein thrombosis, that there was little medical evidence in 2004, and that by January 2005, Parham was considered stable and the disease was not active. (R. at 873, 877, 879). In arriving at these conclusions, Dr. Stump was aware that Parham had chronic proteinuria, which he noted could be either a symptom of lupus or from the residuals of venous thrombosis. (R. at 880). He testified that the protein levels had "improved." (R. at 876). There is no evidence of record indicating that having an "abnormal" amount of protein in the urine, whether measured by grams per 24 hours or by milligrams per deciliter, translates to a disabling condition.

Next, Parham argues that the ALJ erred in making his credibility determination. Specifically, she contends that the ALJ failed to consider factors 6 and 7 which are, any other measures the individual uses or has used to relieve pain or other symptoms, and any

other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* Social Security Ruling 96-7p; 20 C.F.R. § § 404.1529, 416.929. Parham also asserts that the ALJ erred in discounting her credibility because of the lack of objective medical evidence.

In determining Parham's credibility, the ALJ recited the appropriate regulations. (R. at 69). The ALJ discussed each of the statutory criteria in the context of Parham's testimony and other evidence. (R. at 69-72). The ALJ acknowledged that Parham no doubt had physical symptoms, but he determined that there was not credible evidence of symptoms of such frequency, duration, or intensity as to prevent Parham from working at the level assessed. (R. at 71).

As to factor 6 regarding treatment and other measures other than medication taken for relief of pain or other symptoms, the ALJ found that there were none. *Id.* Parham has not pointed to evidence that she believes the ALJ ignored in arriving at this conclusion. As to factor 7 regarding Parham's functional limitations, the ALJ discussed a Physical Capacities Evaluation completed by treating physician Dr. Grau on October 26, 2006, and explained that it was "questionable" because it omitted any consideration of Parham's ability to sit, stand and walk. (R. at 71). Medical expert Dr. Stump opined that Dr. Grau's assessment was generally consistent with the record prior to January of 2004, but not thereafter. *Id.* The ALJ also discussed the testimony of Parham's mother, noting that it was not specifically focused on the time period after Parham was considered to be disabled. (R. at 72).

A reviewing court affords a credibility finding "'considerable deference,' and [will] overturn it only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)). "[A]n ALJ's credibility assessment will stand as long as [there is] some support in the record." *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (internal quotation omitted). "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) (citations omitted). The court "will uphold an ALJ's credibility determination if the ALJ gave specific reasons for the finding that are supported by substantial evidence." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). Here, the ALJ provided specific reasons for his finding that Parham was not fully credible and those reasons are supported by the record. The ALJ did not ignore the applicable criteria or evidence in making his assessment, nor did he rely solely on any lack of objective evidence. The ALJ's discussion relating to Parham's credibility is adequate to allow the court to trace his reasoning. The court does not find that the ALJ's analysis is patently wrong, and therefore, must affirm the ALJ's credibility determination.

Parham further argues that the ALJ failed to incorporate into his RFC restrictions Parham's problems due to bowel incontinence. Parham argues that the ALJ failed to follow the suggestion of Dr. Thomas that the combined mental/physical problem of encopresis (fecal incontinence) be evaluated by a psychiatrist. (R. at 892-93). At the hearing, psychologist Dr. Thomas testified that anxiety could exacerbate encopresis. (R. at 892). Counsel asked psychologist Dr. Thomas, "Would it be helpful for the Judge to have a report

6

from a psychiatrist as to this combination mental, physical problem, evaluate the encopresis for this period of time?" (R. at 892). Dr. Thomas responded, "Well I think there's no question that they're probably linked." *Id.* He further stated, "But I can't establish that link because it is, as you say, it's an intersection between the two." (R. at 893). Dr. Thomas stated that they would need a psychiatrist or a physician "or someone" to analyze the mental/physical link. *Id.* The ALJ at that point stated, "[d]octor, I'll make that decision, okay." *Id.* At the end of the hearing, nothing further was discussed with regard to obtaining any further consultations. Parham did not request that the ALJ order additional evaluations. Contrary to Parham's description of the testimony, Dr. Thomas did not state that such an evaluation of encopresis was "missing from the record" or that a psychiatrist would have to do the evaluation. (R. at 893). The ALJ discussed the record of Parham's mental impairment. He concluded that her depression was not severe. (R. at 67). He noted that in August 2006, Parham reported an increase in depression and anxiety and was given a global assessment of functioning ("GAF") of 55, which indicated moderate symptoms. (R. at 66-67). The ALJ noted that later that month, Parham reported feeling somewhat better and that the Lexapro helped. (R. at 67). The ALJ concluded that Parham did not experience a restriction of her activities of daily living or difficulties in maintaining social functioning related to her mental impairment. (R. at 67). Even if it were established that anxiety could exacerbate encopresis, the record does not support a finding that Parham's anxiety caused significant difficulties in daily functioning. (R. at 66-67, 885-889). As noted by the Commissioner, the record does not document significant or frequent treatment for Parham's incontinence. The ALJ did acknowledge that Parham was having some problems with fecal incontinency in September of 2004. (R. at 70, citing R. at 624). On January 14, 2005, Parham complained to her physician of having had constipation and incontinency, stool leaking, in the last year. (R. at 615). The physician noted that Parham had consulted a GI physician and that the lower GI study was normal. *Id.* Parham testified that she lost several jobs due to having accidents at work and then needing to go home to change clothes. (R. at 897). She stated that she had not anticipated the problem so she would not have clothes with her, and it would take her at least an hour to go home and change clothes. (R. at 897-98). If the problem were frequent enough to cause attendance problems at work, then it would seem that Parham could take reasonable steps to minimize the amount of time missed from work. If the problem were not anticipated, then it is reasonable to infer that it had not caused significant interference with her ability to work. The court does not find that the ALJ erred in not ordering an additional psychiatric examination. Moreover, substantial evidence supports the ALJ's finding that Parham could perform light exertional work.

Parham's final claim is that the ALJ erred at step four by failing to make findings regarding the physical and mental demands of her past relevant jobs. If the court had found reversible errors in the ALJ's RFC determination, then it would follow that the finding as to whether, given her RFC, Parham could perform past relevant work, would be tainted. Under these circumstances, however, the vocational expert testified that Parham's past relevant jobs of insurance clerk, telemarketer and photographer were light or sedentary level jobs. (R. at 904). The court finds no error in the ALJ's consideration of Parham's ability to perform past relevant work because the ALJ's finding was supported by the testimony of the vocational expert.

7

As noted above, the court's role in this case is not to attempt a *de novo* determination of Parham's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence. If the ALJ's view of the evidence is supported by substantial evidence, the court must affirm the decision. "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (internal quotation omitted). The court is "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

"An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). In this case, the ALJ sufficiently articulated his assessment of the evidence to enable the court to "trace the path of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation omitted). Accordingly, because substantial evidence supports the ALJ's evaluation of Parham's impairments, the ALJ's decision must be affirmed.

### III. Conclusion

There was no reversible error in the assessment of Parham's applications for SSI and DIB. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. Under these circumstances, Parham is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 09/28/2009

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana